1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

RALPH HOWARD BLAKELY,

Plaintiff,

11          v.

12    GREGORY JONES, et al.,

Defendants.

Case No. 3:18-cv-05021-RBL-TLF

REPORT AND
RECOMMENDATION

Noted for <u>May 31, 2019</u>

13

14

        This matter is before the Court on defendants' filing of a motion for summary judgment.

Dkt. 65. Plaintiff has sued defendants under 42 U.S.C. § 1983 for violating his right to access the

courts, retaliating against him for activities protected by the First Amendment, and violating

several other constitutional rights. This matter has been referred to the undersigned Magistrate

Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B);

Local Rule MJR 4(a)(4). For the reasons below, the undersigned recommends the Court grant

defendant's motion and dismiss the complaint with prejudice.

15

16

17

18

19

20

21

22

23

24

25

FACTUAL AND PROCEDURAL HISTORY

Plaintiff is an inmate at Airway Heights Corrections Center. Complaint, Dkt. 14, p. 1. His complaint is based on events that occurred when he was incarcerated at Stafford Creek Corrections Center (SCCC). *Id.*

Plaintiff alleges that defendant Gregory Jones, a custodial unit supervisor at SCCC, directed corrections officers to improperly seize his legal documents on two occasions: First, on May 6, 2017, from the cell of another inmate, Alvin Hegge; and second, on July 7, 2017, from plaintiff's own cell. Dkt. 14, pp. 1, 2. He alleges that the documents were passed on to defendant Denise Brewer, a classification counselor, and Thomas L'Heureux, a disciplinary hearings coordinator. *Id.* at 2. Plaintiff alleges that from July through September 2017 L'Heureux refused his requests to return the documents. *Id.*

Plaintiff alleges that the seizure of his documents caused him "severe legal injury and financial loss," including missing "legal deadlines of August 17, and September 12, 2017 Court hearings." Dkt. 14, pp. 2-3. He alleges that his legal documents would have proven his innocence of the crime he is incarcerated for and that defendants' actions have thus prolonged his incarceration. *Id.* Plaintiff alleges defendants have caused "the loss of his life estate, Home, legal personage, liberty and property and physical injuries due to adequate medical and dental." *Id.* at 3.

Plaintiff also alleges that after plaintiff grieved the seizure of his legal documents, Jones retaliated against him "with a bogus major infraction." Dkt. 14, pp. 1, 3-4. He alleges that defendant Brewer participated in this retaliation in August 2017 by emailing Scott Russell, a Washington State Department of Corrections (DOC) administrator, to request plaintiff's transfer to Airway Heights. *Id.* Plaintiff alleges that this retaliation "has caused injury upon injury, of cruel and unusual prolonged painful prison torture." *Id.* at 4.

Liberally interpreting the complaint, plaintiff alleges that defendants violated his right to access the courts, retaliated against him for constitutionally protected activity, violated his right to due process under the Fifth and Fourteenth Amendments, and violated his Fourth Amendment right against unreasonable searches and seizures. Dkt. 14, pp. 3-4; *see Mangiaracina v. Penzone*, 849 F.3d 1191, 1195 (9th Cir. 2017) (court must liberally interpret pro se pleadings).

The parties have conducted discovery in this matter, and the three defendants now move for summary judgment and dismissal with prejudice. Motion for Summary Judgment, Dkt. 65.

<u>MOTION TO STRIKE</u>

In addition to opposing defendants' motion for summary judgment, plaintiff moves to strike two declarations that defendants have submitted—those of defendants Gregory Jones and Thomas L'Heureux. Motion to Strike, Dkt. 76; *see* Declaration of Gregory Jones, Dkt. 71; Declaration of Thomas L'Heureux, Dkt. 72. In these declarations, Jones and L'Heureux testify about circumstances of the seizure of legal documents and plaintiff's infraction for an incident with his cellmate, events that form the basis of plaintiff's lawsuit. *Id.* They attach the incident report and witness statements from that incident. *Id.*

As defendants point out, the request is improperly filed as a separate motion. Local Civil Rule 7(g) ("Requests to strike material contained in or attached to submissions of opposing parties shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief").

Plaintiff also fails to identify any basis for striking defendants' declarations other than his disagreement with them. He asserts that the declarations "contain[ ] false information and/or information that should have been produced during discovery." Dkt. 76, p. 1. But plaintiff's assertion that the declarations contain false information does not warrant striking the declaration. And plaintiff does not support his assertion that any information in the declarations "should have

been produced during discovery" or his assertion that striking the declarations would be an appropriate sanction for such a violation. *See id.*

The Court should accordingly DENY plaintiff's motion to strike, Dkt. 76.

## DISCUSSION

Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255. The Court is not allowed to weigh evidence or decide credibility. *Id.* Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).

If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise

REPORT AND RECOMMENDATION - 4

provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).

If a summary judgment motion is filed early in the litigation—before there has been a realistic discovery opportunity relating to each party's theory of the case—the District Court should grant any FRCP 56(d) motion to take discovery "fairly freely." *Jacobson v. United States Department of Homeland Security*, 882 F.3d 878, 883-84 (9th Cir. 2018).

Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Under Section 1983, an inmate must show that each of the defendants was involved in violating the Constitution; liability of an official will only be found if there is individual culpable action or inaction. *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019).

1    1.    <u>Qualified Immunity</u>

2    The Court should grant defendants' motion for summary judgment with respect to

3    plaintiff's request for damages because defendants are entitled to qualified immunity.

4    Unless plaintiff makes a two-part showing, qualified immunity shields government

5    officials from liability. The plaintiff must show both: (a) that the official(s) violated a federal

6    statutory or constitutional right and (b) that—at the time of the alleged act or failure to act—there

7    was clearly established law that defined the contours of the federal right, such that every

8    reasonable official would understand that what they are doing is unlawful. *Escondido v.*

9    *Emmons*, 139 S. Ct. 500, 503 (2019); *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

10    When qualified immunity is reviewed in the context of a defense motion for summary

11    judgment, the evidence must be considered in the light most favorable to the plaintiff with

12    respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). If there is a

13    genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable

14    officer that their conduct was unlawful under the circumstances they confronted, and (2)

15    Whether the defendant's conduct violated a constitutional right" then summary judgment

16    granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston*, 883 F.3d 865, 871-

17    72 (9th Cir. 2018).

18    As discussed below, viewed in the light most favorable to plaintiff, the facts do not show

19    that defendants' acts violated any of plaintiff's Constitutional rights. Accordingly, defendants are

20    entitled to qualified immunity because the first prong of the qualified immunity test is not

21    satisfied.

22

23

24

25

2.    <u>Defendant's Motion for Summary Judgment Should Be Granted on the Merits of Each Claim</u>

a.    <u>Access to Courts</u>

Mr. Blakely's claim that defendants violated his right to access the courts fails because defendants have shown that there is no genuine dispute of material fact as to whether he was actually injured by the removal of his legal papers or whether defendants' actions were reasonably related to legitimate penological interests, plaintiff has not presented evidence to rebut this showing.

Prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right of access helps ensure that the unlawfully detained obtain their freedom, and that those lawfully detained have recourse for violations of their constitutional rights. *Johnson v. Avery*, 393 U.S. 483, 485 (1969).

Courts differentiate two types of access claims: those involving the right to affirmative assistance and those involving an inmate's right to litigate without active interference. *Silva v. DiVittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds*, *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

The right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Bounds*, 430 U.S. at 828. The right to affirmative assistance is limited to direct criminal appeals, habeas petitions, and civil rights actions. *See Lewis v. Casey*, 518 U.S. 343, 354-55 (1996).

Prisoners also have the right to pursue claims that have a reasonable basis in law or fact without active interference. *Silva*, 658 F.3d at 1103-04 ("*Lewis* does not speak to a prisoner's

1    right to litigate in the federal courts without unreasonable interference."). State actors may not

2    erect barriers that impede the right of incarcerated persons to access the courts. *Id.* at 1102.

3           To prove an unconstitutional denial of access to courts, a prisoner must show some actual

4    injury resulting from such a denial of access. *Lewis*, 518 U.S. at 349. To establish actual injury, a

5    plaintiff must show "actual prejudice with respect to contemplated or existing litigation, such as

6    the inability to meet a filing deadline or to present a claim." *Id.* at 348 (internal quotation marks

7    omitted); *see also Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011)

8    ("Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not

9    be waived.").

10          Finally, an action impinging on an inmate's right of access to the courts is nonetheless

11    valid if it is reasonably related to legitimate penological interests. *See Lewis*, 518 U.S. at 361-62

12    (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

13          Here, plaintiff's right-of-access claim fails because he has not shown actual injury in the

14    form of a specific denial of access to the courts and has not shown that defendants' actions were

15    not reasonably related to legitimate penological interests.

16          The parties agree that the documents at issue were seized on two occasions—May 6,

17    2017, from an inmate, Alvin Hegge, who was helping plaintiff prepare legal filings, and July 7,

18    2017, from plaintiff's own cell. *See* Jones Decl., Dkt. 71, pp. 2-3 & Exhibits 1, 2; Dkt. 79, p. 2.

19          Plaintiff asserts that the seized "legal documents clearly show[ed] a wrongful conviction

20    and actual innocence." Dkt. 79, p. 3, 8, 10, 11. He presents affidavits as proof. *Id.*; Addendum,

21    Declaration, Exhibits in Opposition, Dkt. 80. Plaintiff states in another affidavit that these are

22    some of the documents that were improperly seized, and that there are others that would help

23    him show actual innocence, as well as deliberate indifference by prison staff to his medical

24

25

1    conditions. Dkt. 80, p. 1. He also asserts that the defendants have withheld an itemized list of the

2    documents seized on May 6. Dkt. 79, p. 10.[1]

3         Defendants have met their burden of showing an absence of a genuine dispute of material

4    fact, as they have identified shortcomings in plaintiff's attempts to show prejudice. *See Celotex*

5    *Corp.*, 477 U.S. at 323. And plaintiff has not rebutted defendants' showing by setting forth

6    specific facts showing there is a genuine issue for trial. *See* FRCP 56(e)(2).

7         Responding to defendants' argument that he has not shown actual injury, plaintiff alleges

8    he "has shown greater injury upon injury of loss of freedom, property." Dkt. 79, pp. 6, 7. But

9    conclusory assertions of prejudice are not enough to survive a motion for summary judgment.

10    *See* FRCP 56(c) (party asserting that fact is or is not in genuine dispute must either cite to

11    materials in the record or show why materials in the record do or do not present a genuine

12    dispute of fact); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 (9th

13    Cir. 1995) ("[C]onclusory . . . testimony is insufficient to raise a genuine issue of [material] fact

14    to defeat summary judgment.").

15         The facts that plaintiff alleges would not be sufficient to show actual prejudice, even if

16    plaintiff had presented evidence for them at summary judgment.

17         First, plaintiff appears to contend that if defendants had not seized his documents he

18    would have succeeded in a habeas corpus action—*Blakely v. Tompkins*, No. 2:16-CV-0379-

19    TOR—and thus had his conviction overturned. Dkt. 79, p. 4. But as defendants indicate, the

20

21      [1] Although plaintiff alleges he was also prejudiced by another improper seizure of legal documents and reference

22    materials, in October 2018, that seizure occurred after he was transferred to Airway Heights; he did not seek to
      amend his complaint to make such an allegation part of this suit or to add defendants who work at Airway Heights.
      *See* Dkt. 79, p. 10 (citing Dkt. 55); FRCP 15(a). The documents seized on that occasion allegedly included a brief

23    alleging cruel and unusual punishment based on deliberate indifference. Dkt. 79, p. 10.

      Plaintiff also alludes to a real estate business and unspecified other property that he allegedly lost; he appears to

24    imply that these losses were due to his wrongful incarceration. Dkt. 79, p. 5, 6, 9, 10.

25

United States District Court for the Eastern District of Washington dismissed that case, finding plaintiff's allegations "untimely, unexhausted, and jurisdictionally defective" and that any appeal of its order would be frivolous. *Blakely v. Tompkins*, No. 2:16-CV-0379-TOR, 2016 WL 7378999, at *3 (E.D. Wash. Dec. 19, 2016). It did so in December 2016, well before the defendants' actions, from May to September 2017, that form the basis of this suit. *See* Dkt. 14, pp. 1-3. Plaintiff does not identify any way that having access to his documents several months after the Eastern District of Washington dismissed his lawsuit could have affected his ability to litigate that suit.

Second, plaintiff contends that defendants' acts hurt his chances in another lawsuit, this one against his former attorney. Dkt. 79, p. 5. But according to plaintiff's allegations, success in that suit would have awarded him damages for malpractice; it would not have overturned his conviction or vindicated his civil rights. *See id.* Thus, even if defendants' acts harmed plaintiff's ability to litigate that case, this would not constitute "actual injury" under the Supreme Court's access-to-courts cases. *See id.*; *Lewis*, 518 U.S. at 349.

Third, plaintiff asserts that defendant Jones and nonparty Timothy Rogich, a classification counselor, impeded his ability to access the courts (and caused an increase in physical suffering) by transferring him to Airway Heights without his legal documents. Dkt. 79, p. 5; *see* Jones Decl., Dkt. 71, Exhibit 1. He alleges that Airway Heights provides no legal assistance and prevents him from obtaining help from other inmates. Dkt. 79, p. 6. However, none of the defendants work at Airway Heights and plaintiff thus fails to show that they personally participated in causing any alleged harm at that facility. Brewer Decl., Dkt. 66, p. 1; Jones Decl., Dkt. 71, p. 1; L'Heureux Decl., Dkt. 72, p. 1; *Johnson v. Duffy*, 588 F.2d 740, 744 (9th Cir. 1978) ("personal participation is [a] predicate for section 1983 liability").

Along with his brief in response to the motion for summary judgment, plaintiff submitted an "addendum, declaration, exhibits in opposition" to the motion, which can be construed as part of plaintiff's opposition brief. Dkt. 80 (capitalization altered). Plaintiff asserts that these documents would have shown his innocence of his crime of conviction. *Id.* at 1. He acknowledges, though, that he now possesses these documents, and he presents them to the Court. Dkt. 80 & Exhibits. Although he alludes to "more" documents, he does not describe them or explain how, specifically, he was prejudiced by their seizure. *See id.* at 1.

Fourth, plaintiff alleges in his complaint that the seizure of his documents caused him to miss "legal deadlines of August 17, and September 12, 2017 Court hearings." Dkt. 14, pp. 2-3. Plaintiff's response to the motion for summary judgment does not explain this allegation or cite any evidence for it. *See* Dkt. 79. However, the record contains interrogatory responses that provide further detail for plaintiff's allegation of prejudice to specific court cases.[2] Declaration of Katherine J. Faber, Dkt. 68, Exhibit 2.

Regarding September 12, 2017, plaintiff's interrogatory responses state that he may have had a deadline in a motion for discretionary review to the Washington Supreme Court in case No. 94632-9, his malpractice lawsuit against his former lawyer. But as noted above, the Supreme Court has held that "actual injury" comprises only prejudice to suits challenging plaintiffs' convictions or their conditions of confinement. *See Lewis*, 518 U.S. at 355. Even if proven, harm to plaintiff's malpractice suit would not constitute "actual injury" under *Lewis*.

Plaintiff's interrogatory responses also assert that he had an August 17, 2017, deadline to file for a writ of certiorari with the United States Supreme Court in case no. 17-6122, and that

---

[2] The interrogatory responses were prepared by a "prison para-legal" and signed by plaintiff, though they are the statements of the para-legal. Faber Decl., Dkt. 68, Exhibit 2.

because of the seizure of his legal papers he filed a submission on his own rather than with the help of Mr. Hegge. Faber Decl., Dkt. 68, Exhibit 2. The plaintiff asserts that, as a result, the petition was denied and plaintiff was unable to obtain release from prison or regain "his confiscated estate." And plaintiff asserts that because of the denial plaintiff lost several other cases in several federal and state courts. *Id.*

A review of the docket in Supreme Court case no. 17-6122 shows that plaintiff filed a petition on September 6, 2017, and that the Supreme Court denied it without explanation on December 4, 2017. *Blakely v. Tompkins*, 138 S. Ct. 509 (2017) (memorandum).[3]

To show actual injury, plaintiff must show prejudice to a nonfrivolous challenge to his conviction or his conditions of confinement. In the case in which he asserts he missed a filing deadline (or, more accurately, was forced to submit a brief without his prison paralegal's assistance), the United States District Court for the Eastern District of Washington had dismissed plaintiff's petition while holding that "any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact." *Blakely v. Tompkins*, No. 2:16-CV-0379-TOR, 2016 WL 7378999, at *3 (E.D. Wash. Dec. 19, 2016). The Ninth Circuit then denied plaintiff a certificate of appealability, explaining that plaintiff had "not shown that 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Blakely v. Tompkins*, No. 17-35040, 2017 WL 3122310, at *1 (9th Cir. Apr. 14, 2017), *cert. denied*, 138 S. Ct. 509 (2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Plaintiff's action in seeking a writ of certiorari in that case was therefore frivolous.

---

[3] The Ninth Circuit denied rehearing on June 12, 2017; if it entered judgment on that date, then the 90-day deadline for plaintiff's petition would have been September 11, 2017. *See* 28 U.S.C. § 2101(c).

1    Accordingly, plaintiff has not shown actual injury in asserting that defendants harmed his ability

2    to file a proper brief.

3          Finally, plaintiff briefly implies that the seizure of his legal documents is connected to a

4    seizure of his wheelchair in January 2018, which causes him physical pain. Dkt. 79, p. 4.

5    Plaintiff asserts that the seized documents would enable him to obtain relief from his pain,

6    presumably by facilitating his release from prison. Dkt. 79, p. 8. To the extent plaintiff makes

7    this claim, it is barred by the *Heck* doctrine, as discussed below. *See Heck v. Humphrey*, 512 U.S.

8    477, 486-87 (1994).

9          Thus, none of plaintiff's allegations of prejudice would, even if proven, show "'actual

10    prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing

11    deadline or to present a claim.'" *Greene*, 648 F.3d at 1018 (quoting *Lewis*, 518 U.S. at 349).

12    Defendants are therefore entitled to summary judgment on plaintiff's access to court claim.

13          Defendants are also entitled to summary judgment to the extent that plaintiff claims a

14    "forward-looking" denial of access to courts—that is, a claim concerning "systemic official

15    action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present

16    time." *Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002). Such a claim also depends on the

17    plaintiff's ability to show prejudice in the form of actual injury to a "nonfrivolous, arguable

18    underlying claim." *Id.* at 414-15 (internal quotation marks omitted). As defendants point out,

19    plaintiff acknowledges that he has the affidavits he needs to prove his underlying claim, and he

20    has presented those affidavits to the Court. *See* Dkt. 79, p. 10; Dkt. 80, pp. 3-40. He thus has not

21    shown that the seizure of his documents injured him in pursuing those claims. *See Christopher*,

22    536 U.S. at 413 (noting that "the essence of the access claim is that official action is *presently*

23    denying an opportunity to litigate for a class of potential plaintiffs" and "the object of the denial-

24

25

of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed" [emphasis added]).

In addition to failing to show prejudice, plaintiff also fails to show that the defendants' actions were not reasonably related to legitimate penological interests. *See Lewis*, 518 U.S. at 361-62 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Legitimate penological interests include "security, order, and rehabilitation." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989).

The record indicates that in seizing plaintiff's legal documents from Mr. Hegge, defendants enforced Washington Administrative Code (WAC) 137-25-030(555) ("possessing another offender's property"), DOC policy 590.500, which prohibit inmates from possessing other inmates' legal materials outside the law library, and a DOC policy limiting inmates to keeping one legal box in their cells. *See* Jones Decl., Dkt. 71, pp. 2-3 & Exhibit 1; Declaration of Rebecca A. Citrak, Dkt. 67-1, p. 7; Declaration of Kacey Hyde, Dkt. 70-1, p. 3. Defendants have presented evidence that the DOC has legitimate security concerns with letting inmates possess each other's legal documents. Correctional manager Roy Gonzalez stated in a declaration that: Inmates are not allowed to exchange personal property—including documents—because that conduct may be done in exchange for favors that threaten the security of the institution," such as drug smuggling. Declaration of Roy Gonzalez, Dkt. 69, pp. 2-4. Inmates are not allowed to receive payment or any form of favor for assisting other inmates in a legal matter, "because doing so can lead to the coercion or manipulation of the offender being charged." *Id.* Confining inter-inmate legal assistance to the library helps "dissuade offenders from charging others for legal work or using debt to coerce others." *Id.* And requiring inmates to keep possession of their

1   own legal work decreases the risk that knowledge of their crimes of conviction will spread,

2   which could lead to targeted violence and harassment of some inmates. *Id.*

3       In response, plaintiff asserts only that inmates sharing legal work "does not concern

4   prison staff." Dkt. 79, p. 3. But such a conclusory assertion cannot substitute for evidence that

5   would show a genuine dispute as to whether defendants' actions were reasonably related to a

6   legitimate penological interest. *See Anheuser-Busch, Inc.*, 69 F.3d at 345.

7       Courts have upheld similar policies against challenges by inmates. *See Schenck v.*

8   *Edwards,* 921 F. Supp. 679, 684 (E.D. Wash. 1996), *aff'd*, 133 F.3d 929 (9th Cir. 1998)

9   ("Prevention of extortion and blackmail, and avoidance of tension among inmates, is certainly a

10  legitimate penological interest. A policy (written or unwritten) that prohibits one inmate from

11  preparing pleadings for another inmate is reasonably related to that legitimate penological

12  interest."); *Pennick v. Mason*, 288 F. App'x 393, 394 (9th Cir. 2008) (unpublished) ("[T]he

13  district court properly concluded that even if DOC did not provide such legal assistance, the

14  policy that prohibits inmates from possessing each others' legal papers outside the law library is

15  reasonably related to legitimate penological interests."); *Schenck v. Edwards*, No. 96-35233,

16  noted at 133 F.3d 929 (9th Cir. 1998) (unpublished) (rejecting Due Process challenge to

17  enforcement of DOC Division Directive 590.500(B)(4)).

18      Here, defendants have shown that, under the *Turner v. Safley* factors, (1) there is a valid,

19  rational connection between the policy and a legitimate government interest in maintaining

20  security and order in prison; (2) there are alternative means for plaintiff to exercise his right to

21  access the Courts (getting assistance while in the law library); (3) accommodating a right to be

22  exempt from the DOC policy would impact other offenders, prison staff, and prison resources by

23  leading to potential harm from the exempt inmate's crime of conviction becoming widely

24

25

1  known; and (4) there are no workable alternatives showing that the regulation is an exaggerated

2  response to prison concerns. 482 U.S. 78, 89-91 (1987).

3              b.    Retaliation

4      Plaintiff also contends that defendants Jones and Brewer retaliated against him for his

5  litigation activity by giving him a "fraudulent infraction" and transferring him to Airway Heights.

6  Dkt. 14, pp. 1-2; Dkt. 79, p. 7.

7      To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he or

8  she engaged in conduct protected under the First Amendment; (2) the defendant took adverse

9  action; (3) the adverse action was causally related to the protected conduct; (4) the adverse action

10 had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did

11 not advance a legitimate correctional interest. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir.

12 2012).

13     Defendants have met their burden of showing an absence of a genuine dispute of material

14 fact for trial, as they have identified shortcomings in plaintiff's attempts to show that their

15 actions were motivated by plaintiff's protected conduct and did not advance a legitimate

16 penological interest. Dkt. 65, pp. 14-16; *see Watison*, 668 F.3d at 1114–15; *Celotex Corp.*, 477

17 U.S. at 323. Plaintiff has not rebutted defendants' showing by setting forth specific facts showing

18 there is a genuine issue for trial. *See* FRCP 56(e).

19     The timing of events is the only evidence plaintiff presents to show that defendants

20 infracted him or had him transferred because of his protected litigation activity. That is, Jones

21 gave plaintiff the infraction, and Brewer consequently revised his Custody Facility Plan

22 (resulting in a demotion to medium custody) three weeks after Jones caused plaintiff's legal

23 documents to be seized from Hegge, and this infraction and demotion led to plaintiff being

24

25

1     transferred from SCCC to Airway Heights. *See* Brewer Decl., Dkt. 66, pp. 3-4; Jones Decl., Dkt.

2     71, Exhibits 2, 3; L'Heureux Decl., Dkt. 72, Exhibit 1.

3          While timing can be considered circumstantial evidence of retaliatory motive, timing

4     alone cannot establish retaliation. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Overall

5     circumstances of the alleged retaliation must be considered, and not simply the order of events.

6     *See id.*

7          Plaintiff alleges that Jones infracted him because plaintiff had grieved the seizure of his

8     legal documents and was pursuing litigation with Hegge's assistance. Dkt. 14, pp. 1, 3-4; Dkt.

9     79, p. 7. But plaintiff points to no evidence that his protected activity was the "motivating factor"

10     for defendants' actions, as a retaliation claim requires. *Brodheim v. Cry*, 584 F.3d 1262, 1271

11     (9th Cir. 2009).

12          As defendants point out, Jones interviewed plaintiff and wrote an infraction report on

13     July 7, 2017, which was before plaintiff filed his grievances. *See* Jones Decl., Dkt. 71, p. 3 &

14     Exhibit 2; Citrak Decl., Dkt. 67, Exhibits 1, 2. Moreover, plaintiff does not point to any

15     evidence—other than the timing of Brewer's actions—to show that his grievances or litigation

16     activity motivated defendant's Brewer's actions in recommending a transfer. Plaintiff must show

17     more than this timing for his retaliation claim to withstand summary judgment. *Pratt*, 65 F.3d at

18     808.

19          Plaintiff has also failed to rebut defendants' showing that their actions were taken to

20     advance a legitimate penological interest. Preserving institutional order, discipline, and security

21     are legitimate penological goals that will defeat a claim of retaliation where they motivated the

22     official act in question. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to

23     restrictions of first amendment rights must be analyzed in terms of the legitimate policies and

24

25

1    goals of the correctional institution in the preservation of internal order and discipline,

2    maintenance of institutional security, and rehabilitation of prisoners."). The burden is on the

3    plaintiff to allege and prove that legitimate correctional purposes did not motivate the actions

4    that he complains of. *See Pratt*, 65 F.3d at 806, 808. In evaluating defendants' "proffered

5    legitimate penological reasons," this Court must "'afford appropriate deference and flexibility' to

6    prison officials." *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

7         Here, defendants have presented evidence that plaintiff was infracted under WAC 137-

8    25-030(508) for spitting or throwing objects, materials, or substances in the direction of another

9    person, after plaintiff threw water in his cellmate's face on July 6, 2017. Jones Decl., Dkt. 71, pp.

10   3-4 & Exhibit 3. Defendant Jones's duty to enforce prison rules is a "more likely explanation[ ]"

11   for his action than a retaliatory motive. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

12        Although plaintiff presents affidavits from other inmates suggesting that the witnesses

13   against him in his infraction hearing were lying, this would not establish retaliatory motive by

14   Jones—instead it would undermine such a claim by tending to show Jones was duped into

15   infracting plaintiff. *See* Dkt. 79, pp. 39-40 (Okarski and Brockman declarations); Jones Decl.,

16   Dkt. 71, ¶ 7.

17        Likewise, defendants submitted evidence that defendant Brewer recommended plaintiff's

18   transfer after reviewing and revising his Custody Facility Plan, due to his status as a "de facto

19   LWOP [life without parole] offender in minimum MI3 custody." Brewer Decl., Dkt. 66, p. 32.

20   Brewer was required to take these actions by DOC Policy 300.380. *Id.*, pp. 2-4. Although

21   plaintiff asserts that Brewer e-mailed administrator Scott Russell to have plaintiff transferred, he

22   offers no evidence for this and Brewer refutes it in a declaration. *See* Dkt. 14, p. 3; Brewer Decl.,

23   Dkt. 66, p. 4. Brewer states that the Custody Facility Plan was sent to Russell and suggests this

24

25

REPORT AND RECOMMENDATION - 18

1    may be what plaintiff was referring to. Dkt. 66, p. 4. It is unclear, in any case, how Brewer

2    informing Russell about the infraction and plaintiff's new Custody Facility Plan would

3    demonstrate retaliatory motive. As with Jones's action, Brewer's duty to follow up on inmate

4    infractions is a "more likely explanation[ ]" for her involvement in plaintiff's transfer. *See Iqbal*,

5    556 U.S. at 681.

6         Accordingly, plaintiff has failed show a genuine dispute of material fact as to at least two

7    elements of a § 1983 retaliation claim: that retaliation was the "motivating factor" in defendants

8    Jones and Brewer's actions and that defendants did not act to further legitimate penological

9    interests. The Court should therefore grant summary judgment for defendants on that claim.

10         c.     Fourteenth Amendment Due Process and Equal Protection

11        Plaintiff also asserts that, in seizing his legal documents, defendants violated his rights to

12   equal protection and procedural due process under the Fourteenth Amendment. Beyond alluding

13   to these constitutional rights, however, plaintiff does not explain how defendants caused these

14   rights to be violated; nor does he present evidence to substantiate such claims. Defendants are

15   thus entitled to summary judgment on these claims. FRCP 56(a).

16        Even if plaintiff made such an argument, however, defendants would be entitled to

17   summary judgment on both of his Fourteenth Amendment claims.

18        The due process clause of the Fourteenth Amendment provides that no person shall be

19   deprived of life, liberty or property without due process of law. Plaintiff appears to assert that

20   defendants deprived him of both liberty and property without due process.

21        Prisoners have "no liberty interest in freedom from state action taken within the sentence

22   imposed" unless such action imposes "atypical and significant hardship on the inmate in relation

23   to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 480, 484 (1995). The

24   Supreme Court has identified three factors in determining whether an "atypical and significant

25

1    hardship" exists: how the challenged action compares to other inmates' conditions; the duration

2    and degree of the restraining condition; and the effect of the action on the length of the prisoner's

3    sentence. *Id.* at 486-87; *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). This test

4    "requires case by case, fact by fact consideration." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.

5    1996). A cell search involving "the inspection of [an inmate's] legal papers in his absence is

6    simply not a dramatic departure from the basic conditions of his incarceration." *Mitchell v.*

7    *Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996).

8        Plaintiff presents no evidence that other inmates are not subject to the DOC policies

9    regarding possessing other inmates' legal documents and keeping more than one legal box in

10   one's cell. Nor does he show that the duration and degree of the deprivations of his legal

11   documents is "atypical and significant." And apart from the alleged prejudice to plaintiff's

12   habeas corpus filing—an action that was frivolous, as noted above—plaintiff has not shown that

13   defendants' actions affected the length of his sentence. Accordingly, plaintiff shows no atypical

14   and significant hardship, and his due-process claim must fail.

15       Nor has plaintiff shown that defendants violated a property interest in the legal

16   documents that were seized. The due process rights of prisoners "are not absolute; they are

17   subject to reasonable limitation or retraction in light of the legitimate security concerns of the

18   institution." *Bell v. Wolfish*, 441 U.S. 520, 554 (1979). "An inmate does not have a property

19   interest in possessing contraband." *Arteaga v. Alameida*, 2008 WL 364785, *10 (E.D. Cal. 2008)

20   (unpublished) (citing *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006)). Moreover, "[a]n

21   unauthorized intentional deprivation of property by a state employee does not constitute a

22   violation of the procedural requirements of the Due Process Clause of the Fourteenth

23   Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v.*

24

25

*Palmer*, 468 U.S. 517, 533 (1984). Washington statutes provide a "remedy for tortious conduct of state officials and for loss of prisoners' property." *Pennick v. Mason*, 288 F. App'x 393, 394 (9th Cir. 2008) (unpublished) (citing Wash. Rev. Code §§ 4.92.090, 72.02.045, and *Hudson*, 468 U.S. at 533).

Plaintiff has a post-deprivation remedy available to him under state law—he can bring a state tort claim. *See* Wash. Rev. Code §§ 4.92.090 (remedy for tortious conduct of state officials), 72.02.045 (remedy for loss of prisoner's property); *Hudson*, 468 U.S. at 533 (unauthorized intentional or negligent deprivations do not violate Due Process Clause if plaintiff has adequate post-deprivation remedy under state law). Accordingly, plaintiff fails to show a genuine dispute of material fact as to whether defendant deprived him of a property right without due process.

Plaintiff also has not shown a genuine dispute of material fact as to whether defendants violated his equal-protection rights. To demonstrate an equal protection violation, plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998). To defeat summary judgment, the plaintiff must "produc[e] evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that" the challenged action was motivated by animus against the protected trait. *FDIC v. Henderson,* 940 F.2d 465, 473 (9th Cir. 1991). Here, plaintiff has not presented any evidence that defendants discriminated against him based on his membership in a protected class. Accordingly, his Fourteenth Amendment equal protection claim must fail, as well.

d.   Fourth Amendment Unreasonable Search and Seizure

Plaintiff also contends that, in seizing his legal documents, defendants violated his Fourth Amendment right against unreasonable searches and seizures. Inmates of state prisons do not

have a right against unreasonable searches and seizures in relation to their prison cells. *Hudson v.*

*Palmer*, 468 U.S. 517, 525-26 (1984). Accordingly, defendants are entitled to summary

judgment on plaintiff's Fourth Amendment claim.

e.     Fifth Amendment Equal Protection

Plaintiff also alludes to the Fifth Amendment in asserting that defendants violated his

right to equal protection. Dkt. 14, p. 4; Dkt. 79, p. 9. But the right to equal protection under the

Fifth Amendment's due process clause applies only to actions by the federal government. *Lee v.*

*City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). Because defendants are state employees

and not federal actors, they are entitled to summary judgment on plaintiff's Fifth Amendment

claim. *See* Brewer Decl., Dkt. 66, p. 1; Jones Decl., Dkt. 71, p. 1; L'Heureux Decl., Dkt. 72, p. 1.

f.     Eighth Amendment Cruel and Unusual Punishment

Plaintiff also asserts that defendants have violated his Eighth Amendment right against

cruel and unusual punishment by seizing and keeping his legal documents. He alleges that he is

suffering severe pain and inadequate medical treatment in prison and that defendants are

responsible because the confiscated legal documents would prove he is innocent of his crime of

conviction and his continued incarceration is therefore illegal. *See* Dkt. 14, p. 3; Dkt. 79, p. 4. He

also alleges that his suffering has increased since his wheelchair was seized in January 2018.

Dkt. 79, p. 4.

A plaintiff may only recover damages under § 1983 for allegedly unconstitutional

imprisonment, or for any other harm caused by actions whose unlawfulness would render the

imprisonment invalid, if the prisoner can prove the conviction or other basis for confinement has

been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such a determination, or called into question by a federal court's issuance of

a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A "§ 1983 action is

barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of his suit (state conduct leading to the conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Here, plaintiff's Eighth Amendment claim depends on his allegation that the seized legal documents would prove that he is actually innocent. Success on this claim would thus "necessarily demonstrate the invalidity of confinement or is duration." *See Wilkinson*, 544 U.S. at 81-82. Plaintiff has not shown that his conviction has been reversed, expunged, declared invalid, or called into question by a federal court's grant of habeas corpus. *See Heck*, 512 U.S. at 486-87. Accordingly, the *Heck* doctrine bars plaintiff's Eighth Amendment claim.

g.    Tort of Outrage

Plaintiff also raises a claim, based on the same facts as his retaliation claim, that defendants are liable for a "tort of outrage" under state law. Dkt. 14, p. 4. This Court has supplemental jurisdiction to consider this claim because it "form[s] part of the same case or controversy" as plaintiff's federal retaliation claim and "derive[s] from a common nucleus of operative fact." 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

The elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Rice v. Janovich*, 109 Wn.2d 48, 61 (1987). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975). Whether certain conduct is sufficiently outrageous

is ordinarily for the jury to decide, but it is initially for the court to determine if reasonable minds can differ on whether the conduct was sufficiently extreme to result in liability. *Phillips v. Hardwick*, 29 Wn. App. 382, 387 (1981).

Plaintiff alludes to the tort of outrage but has not alleged that any of the required elements are present here. *See* Dkt. 14, pp. 3-4. Nor has he alleged facts from which a reasonable jury could conclude that any of the defendants engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Grimsby*, 85 Wn.2d at 59. The Court should thus grant summary judgment for defendants with respect to plaintiff's outrage claim.

<u>CONCLUSION</u>

Based on the above discussion, the undersigned recommends the Court grant defendants' motion for summary judgment and dismiss plaintiff's complaint.

If the Court adopts the undersigned's Report and Recommendation, leave to proceed *in forma pauperis* for purposes of appeal may be denied if the appeal is frivolous or taken in bad faith. *Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002); 28 U.S.C. § 1915(a)(3). The undersigned recommends plaintiff's *in forma pauperis* status continue for purposes of appeal, as at least one of plaintiff's claims (his claim based on denial of access to courts) was not frivolous and therefore an appeal of the Court's order denying that claim would not be taken in bad faith. *Hooker*, 302 F.3d at 1092.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

1    U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration

2    on **May 31, 2019**, as noted in the caption.

3         Dated this 15th day of May, 2019.

Theresa L. Fricke
United States Magistrate Judge